Andrew Jacobs for the plaintiff excuse me for the for the petitioner and appellant Anissa Borovina may it please the court your honors in this matter we have a series of conjoined legal errors that have really prevented justice from being done in this case we have here an immigration judge who really ignored the Garcia case in the instance where petitioner Borovina was seeking to have her I-130 resolved and she already had a pending asylum petition the I-589 and she had through her counsel made a written motion and then counsel stated orally at the hearing in Phoenix where the errors began that she had submitted essentially a joint motion a request that was conjoined on one hand she was seeking to withdraw the asylum request but that was in turn joined with and in the ordinary course under Garcia the rule of course as this court hears all the time the rule is that you're going to have that I-130 determined unless there's something on the face of it that you know indicates that it is not sufficient there's something that indicates on the face of it it's not bona fide there was no such circumstance present and nonetheless the immigration judge essentially secured the waiver from Miss Borovina a waiver of her determination of the I-130 which in the ordinary course under Garcia should have gone forward anyway. That issue wasn't appealed, was it? Excuse me, Your Honor? That issue was not brought to the BIA. The BIA was not told the I-J erred so please reverse it because the I-J shouldn't have done A first. I would respectfully disagree with that, Your Honor. The I-J had the I-J had before it the issue of the I-130 was in fact before the BIA, Your Honor, and that's what I'm referring to there. Now to the extent that counsel did not raise further matters sort of appurtenant to that, Your Honor, which I take to be your point you know the conjoined nature of the 589 and the 130 he didn't say that in the BIA. That's right, Your Honor. So one can't really argue oh well he shouldn't have let her withdraw her asylum claim, correct? I disagree, Your Honor. I think it's a of counsel. IAC was not raised to the BIA either. No. No, it was not raised by the same lawyer in the BIA who had made the error. And it hasn't been raised on a motion to reopen before the BIA has it. It was not raised because the lawyer who was involved in both matters below was the same lawyer up until this court and only replaced for illness with appointed counsel. My point is it hasn't been raised to the BIA. Absolutely, Your Honor. That's exactly right. And that's why we cited authority indicating that where the counsel who was involved in all the underlying errors does not assert them. But you haven't filed a motion to reopen. That's the problem I'm having. Our case law says the way you challenge that now is to file a motion to reopen, assuming that you're not way out of time in order to do so. We have not filed a motion to reopen, Your Honor. That is the state of this record. And our case law says that's the only way you can tee that issue up to get it back before the board. That issue being IAC. That is to say IAC has not been raised. I don't see IAC properly in front of us. Then I will proceed to argue the fact that the immigration judge violated due process because the immigration judge just completely ignored Garcia. You had a judge here who was engaged in precisely what happened in Hashmi, which is the case the Department of Justice cites back to us in the response. Hashmi is a case about when you continue. And what happened at this hearing was there was clearly a denial of a motion to continue. The motion to continue was not granted in the first place. And Hashmi is a case where there were two years of continuances and I think five continuances. And what the Third Circuit said in remanding back to the BIA in the Hashmi matter was that it wasn't good enough just to truncate the process for case processing goals. And that is exactly what happened here. The problem I'm having with the factual record here is that we've got a marriage that occurs during the under the regulations, a sham marriage, which puts the burden on the petitioner to demonstrate the bona fides of the marriage. And so the IJ was faced with what I'm sure they see on a fairly regular basis, a request to continue ad infinitum based on a marriage that occurred while the deportation proceedings were pending, which is highly suspicious. Why should we declare that to be an abuse of discretion on the part of the IJ in denying the continuance? Your Honor, there is under ACFR 204.2 a procedure to rebut the presumption that a marriage entered into celebrated after removal proceedings begin is in fact bona fide, which happened here. And I think the government refers to that in its brief. But there's a very quick answer to that, which is the Pedreros versus Keisler case. I think that's out of the Third Circuit. And at page 166, the court there discusses a circumstance precisely like this. And it refers to the prima facie nature of the I-130 as distinct from the bona fide proof that is implicit in Your Honor's question. And that's respectfully what I think the DOJ is doing in its brief. If it's conflating the prima facie showing in the I-130 with the requirement of showing the bona fides, and I'm sorry. How can you have a prima facie showing where your burden, prima facie, is to show something to the contrary? You don't put in any, there's nothing before the BIA that says it was a bona fide marriage. Well, again, that's just a marriage certificate there. And by the way, if they looked at the record, when this proceeding started, she was married to somebody else. Yes, Your Honor. And Pedreros is precisely the answer to that, because that case sets out the distinction. And it's like in Title VII. You know, you start off with a prima facie showing. That doesn't mean you proved your case. You know, as I look at the... No, but it does mean you have to prove something. And do you know what the prima facie case is in Title VII? Yes, Your Honor. And in this case, the prima facie... It's not just I was of a certain race and I didn't get the job. Right. No, there are other elements to prove your prima facie case. In here, she's presumed to be, it's presumed that her marriage is not bona fide. Well, that's... And all the BIA and the IJ said was, give us some evidence that shows it is bona fide. Well, actually, what the IJ did was truncate the process without a single continuance with it, which is unusual and deprived her of the opportunity to provide any evidence. And while the IJ used the phrase ad infinitum, there was no request for ad infinitum continuance. The other cases that we've cited are all cases that have 18 or 24 months for adjudication. Pedreros is a case like this where the person was already ordered deported, and yet the Third Circuit reversed because there was a prima facie showing in the eyes of the Third Circuit. Let me ask you... That's the problem we're having. In order to establish a prima facie case, the regulations are very clear. They say that in order to rebut the presumption that this is a sham marriage, you must show by clear and convincing evidence that the marriage was entered into in good faith and that it was not entered into for the purpose of procuring the alien's admission as an immigrant. And you do that under the regulations by filing supporting documentation, including affidavits or other evidentiary material, and she didn't do that here. She was at the first hearing immediately after the marriage and was seeking one continuation of time from the IJ to do that, and that is on all fours with Pedreros because that was a case where removal had already been indicated, and the Third Circuit indicated that it was proper to let the person go back and show beyond the four corners of those papers that they, in fact, had the bona fides. You can't prove up the bona fides at the very first hearing. And when she was in front of the BIA and made her motion to remand, which we treat like a motion to reopen, she still didn't put anything in, correct? She was represented by the same lawyer. She still did not put in any. You're going off on a different tangent. What I'm saying is on her motion to reopen, she still didn't submit anything. You're saying, well, she didn't have time to do it at the IJ. She didn't have the opportunity. But at the BIA, she still didn't do it. There's still nothing in the record before the BIA, and they say that. She doesn't give us anything. She gives us her marriage certificate at the end. As I read the Board's decision on remand in Hashimi, the Third Circuit case, it lays out a whole series of criteria that the IJ is supposed to consider, and I assume, then, that the BIA looks at in deciding whether or not to reverse or to grant the motion to reopen and so on in order that the continuance should be granted. One of those criteria, in fact, probably the central criterion, is how likely is it that the adjustment of status based on the marriage is going to be granted. So even under this, which is now, I think, relatively favorable to people seeking continuances, the IJ didn't have anything in front of him to make him think that the presumption ought to be reversed and that he, therefore, should say, you know, OK, I'll give you the continuance because I have some evidence that the presumption shouldn't apply. So I'm stuck even with the relatively favorable decision that the Board came to in Hashimi in 2009. Hashimi wants IJs to use reasoned criteria between pages 50 and 56 of the administrative record. There's absolutely none, and it does violence to what's in Hashimi, I think, but I've used it my time here. No, don't worry about that. Sure. Let me ask you a different question, though. Is there some obligation on the part of the IJ to independently inquire or to say, here's what you need to give me? They say the IJ is right there and just says you can withdraw and no continuance. I think there was a duty on the part of the IJ to at least communicate clearly in the same manner when, you know, you do a plea allocution, and I don't think the IJ did that. I think they have that duty, and they didn't do it. OK. Let's hear from the government, and we'll give you a minute. Thanks, Your Honor. Your Honor's counsel, my name is Margaret Cuney-Taylor. I represent the government in this matter. I'm not going to address the jurisdictional problems here unless the court has questions they would like to ask me. All right. Then I'd like to turn to the court's review of the denial motions. There are two motions. First, the immigration judge's denial of the motion to continue, and second, the board's denial of the motion to remand. With reference to with respect to the continuance motion, I'd like to remind the court that the review is one of clear abuse, not just abuse of discretion. So it's an extra measure of deference that's owed to the motion to continue denial. And as was discussed with the petitioner's counsel, this case arose in the context of a marriage that was celebrated after removal proceedings began. And the motion to continue was very poorly supported, where the only documents attached to the motion were a copy of the I-130, the husband's birth certificate, which, incidentally, he was born in Mexico, and the marriage license. So that is what the immigration judge had in front of him when he was deciding whether to continue this case or not. And I don't see how the court could see that this was a clear abuse of discretion to deny a continuance based on this poorly supported motion. With reference to the motion to remand, which was before the board, the same documents were attached with one addition, which was that the DHS had now received the I-130, so there was a receipt added to the motion to remand. Again, not enough. Certainly doesn't meet any of the clear and convincing standards showing the bona fides of Ms. Boer being a second marriage. There's nothing here showing jointly held property. There's nothing showing financial commingling. It's just very bare bones, and so the government's position is that the board did not abuse its discretion when it denied the motion to remand, and the IJ didn't engage in clear abuse when he denied the motion to continue. Is there anything I can answer for the court? The government urges the court to defer to the denials of the motion. Thank you. Okay, thank you. Would you like one minute? Only if you have anything further, Your Honor. Nothing further. Thank you. Okay. Thank both counsel for their argument. And I would like to thank particularly Mr. Jacobs for your assistance as pro bono counsel. The court very much appreciates not just you, but all of you who perform this function. It is an extremely valuable function, not just to us, but to the system at large. So thank you. Your Honor, if I may, it was Ms. Canan that did all the work. She left our firm, so I argued it, but she did all the work, Your Honor. Well, would you please convey our thanks to her? I will, Your Honor. And we thank your firm as well. Yes. I'll third the compliments. Thank you.
judges: Fernandez, Fletcher W. , Tallman